## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

| | | |
|---|---|---|
| JON HOWARD ROWLAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO.: 313-CV-702 |
| v. | ) | |
| | ) | |
| THE STRAYER UNIVERSITY | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO QUASH
### SUBPOENAS DUCES TECUM

Defendant The Strayer University Corporation ("Strayer") hereby files its Response to

Plaintiff Jon Howard Rowland's Motion to Quash Subpoenas Duces Tecum and, in support

thereof, shows the Court the following:

### I.
### SUMMARY

This is an employment case in which Plaintiff alleges he was discriminated against, and

that his employment was terminated, based on his sex and age. Plaintiff seeks, among other

things, economic damages in this matter. The subpoenas that are the subject of Plaintiff's

Motion to Quash were sent to Plaintiff's pre-Strayer employers. Requests for such documents

are common in employment discrimination cases and case law makes it clear that records from

pre-defendant employers are relevant and discoverable. In the case at hand, the prior

employment records are relevant to the issues in this matter or may lead to the discovery of

relevant information as it relates to: (1) Plaintiff's alleged economic damages; (2) mitigation of

damages; and (3) Defendant's after-acquired evidence defense.

For the reasons explained in detail below, Plaintiff's Motion to Quash must be denied.

1

**II.**

**THE SCOPE OF DISCOVERY IN EMPLOYMENT CASES ENCOMPASSES THE EMPLOYMENT RECORDS SOUGHT BY THE SUBPOENAS**

**A.    The Federal Rules Provide For Broad Discovery Relating To Plaintiff's Employment In Employment Discrimination Cases**

The scope of discovery obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules. *EEOC vs. Rexnord Industries, LLC* , 2012 U.S. Dist. LEXIS 91006 (E.D. Wis. June 29, 2012). Federal Rule of Civil Procedure 26(b) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense...relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings. *EEOC v. Woodmen of the World Life Insurance Society* , 2007 U.S. Dist. LEXIS 7488 (D. Neb. 2007). Relevancy, for purposes of discovery, has been defined by the United States Supreme Court as encompassing "any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders* , 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). Discovery requests should be considered relevant if there is any possibility that the information sought is relevant to any issue in the case and should ordinarily be allowed, unless it is clear that the information sought can have no possible bearing on the subject matter of the action. *Woodmen*, 2007 U.S. Dist. LEXIS 7488.

Typically, the burden is on the party resisting discovery to explain why discovery should be limited given that the Federal Rules allow for broad discovery. A discovery request should be allowed unless it is clear that information sought can have no possible bearing on the claim or defense of a party. *Estes v. Conocophillips Company*, 2008 U.S. Dist. LEXIS 36708 (N.D. Ok.

May 5, 2008). When the requested discovery appears relevant, the party opposing the discovery has the burden of establishing the lack of relevance by demonstrating that the requested discovery either does not come within the scope of relevance set forth in Fed.R.Civ.P. 26(b)(1), or that is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. *Id* .

The documents sought by Strayer in the subpoena are clearly within the scope of discovery allowed by the Federal Rules of Civil Procedure. Plaintiff has requested economic damages, which would include both back pay and front pay in his Complaint. Plaintiff has a duty to mitigate his damages, and the job skills and training that he received prior to his employment with Strayer are relevant to his ability to mitigate his damages. A plaintiff's personnel records, with appropriate protection for medical information and other such documents, are generally fair game in any employment lawsuit. *Estes v. Conocophillips Company*, 2008 U.S. Dist. LEXIS 36708 (N.D. Ok. May 5, 2008). Plaintiff has not met the burden of establishing that an exception to the broad discovery rules should be made with regard to his personnel records.

**B.      Pre-Strayer Employment Records Are Relevant And Discoverable**

Courts have held that records from prior employers are relevant to a number of issues in employment cases and are, thus, subject to discovery. *See Baer v. Midland Enters.*, No. Civ.A.03-1331, 2004 WL 1238004, at *2 (E.D. La. 2004) (finding plaintiff's past employment records relevant to defendant's after-acquired evidence defense in disability discrimination case); *see also Walker v. Northwest Airlines Corp.*, 2002 U.S. Dist. LEXIS 27592 at *5-6 (defendant in employment discrimination case entitled to significant latitude to discover whether plaintiff has been subject of disciplinary action for past and post-termination work performance). Under the

above authority, Plaintiff's pre-Strayer employment and payroll records are discoverable and the subpoenas seeking this information should not be quashed.

In *Walker*, the plaintiff alleged termination based on racial discrimination, but the defendant claimed the plaintiff was terminated for cause. *Id.* During discovery, the plaintiff refused to sign authorizations for his wage and employment records. The Walker Court concluded that the authorization was not overly broad or unnecessarily invasive of the plaintiff's privacy. It stated, "First, Plaintiff cannot hide behind blanket assertions or privacy to avoid legitimate discovery requests without showing some particular need or bad faith...Second, both past and post-termination wage and employment records are highly relevant to the issue of mitigation and to the computation of damages in this case. Third, other types of employment information, such as disciplinary records, resumes, and applications may not be admissible at trial, but are reasonably calculated to lead to the discovery of admissible evidence." *Id.*

Here, Plaintiff has alleged that he was terminated because of his sex and age, but Strayer contends that he was terminated for violating its policies and procedures. As in *Walker*, Defendant should be allowed to obtain Plaintiff's pre-employment wage and employment records from his employer. These records are clearly relevant to his duty to mitigate his damages. *See also*, *Hite v. Peters*, 2009 U.S. Dist. LEXIS 51894 (D. N.J. June 19, 2009) (plaintiff's employment records are relevant to the issue of mitigation).

Further, Strayer undoubtly relied on Plaintiff's work history in employing him. Plaintiff's application required him to list or otherwise detail his past work experience and education, and to certify that the information contained in the application was true and complete. Thus, should Strayer discover in this case that Plaintiff misrepresented his work experience and education, Strayer will have a basis for arguing that Plaintiff's damages should be limited

because Strayer would not have hired Plaintiff had it known of -- or would have fired him upon learning of -- these misrepresentations. As such, Defendant is entitled to explore the accuracy of Plaintiff's representations through the work records it has requested.

## III.
## CONCLUSION

In this employment discrimination case, Plaintiff's employment records from his employers are relevant and discoverable. Plaintiff's objections to this discovery are invalid and contrary to the weight of relevant authority. Accordingly, Plaintiff's Motion to Quash Subpoenas Duces Tecum must be denied.

Notably, in an attempt to resolve this discovery dispute, Defendant offered to limit its request for employment records to only three of Plaintiff's past employers, which included Kavland-2005-2006 and Union Planters-2002-2005. This proposal was summarily declined by Plaintiff's counsel. As such, Defendant also respectfully requests that the Court award it reasonable attorney's fees and costs incurred in responding to Plaintiff's motion.

Respectfully submitted,

s/ Rodrick D. Holmes
Joycelyn Stevenson (#21710)
Tamika R. Nordstrom (pro hac vice)
tnordstrom@littler.com
Rodrick D. Holmes (#24501)
rholmes@littler.com
LITTLER MENDELSON, P.C.
3725 Champion Hills Drive
Suite 3000
Memphis, TN 38125
Telephone: 901.795.6695
Facsimile: 901.881.0295

Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of December, 2014, I electronically filed the foregoing *"Defendant's Response to Plaintiff's Motion to Quash Subpoenas Duces Tecum"* with the Clerk of the Court using the Court's CM/ECF system, which will send notification of such filing to the following attorney of record:

David A. Burkhalter
BURKHALTER, RAYSON & ASSOCIATES, P.C.
111 S. Central Street
Knoxville, TN 37902
david@burkhalterrayson.com

s/ Rodrick D. Holmes
Rodrick D. Holmes



Caution
As of: Dec 02, 2014

**GEORGE A. WALKER, Plaintiff, v. NORTHWEST AIRLINES CORPORATION; NORTHWEST AIRLINES, INC.; and RICHARD VANDERMOLEN, Defendants.**

**Civil No. 00-2604 (MJD/JGL)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA**

**2002 U.S. Dist. LEXIS 27592**

**October 28, 2002, Decided**

**SUBSEQUENT HISTORY:** Magistrate's recommendation at, Summary judgment proceeding at Walker v. Northwest Airlines, Inc., 2003 U.S. Dist. LEXIS 24455 (D. Minn., Oct. 28, 2003)

**DISPOSITION:** Defendant's motion for order to show cause and to compel granted in part, denied in part, and denied as moot in part.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant former employer filed a motion for an order to show cause and a motion to compel production of documents in plaintiff former employee's action alleging race discrimination. The motions were referred to a magistrate judge.

**OVERVIEW:** Plaintiff claimed that he was terminated from his job because of race discrimination, and defendant claimed that plaintiff was fired for cause. The motions arose from plaintiff's alleged failure to comply with a pretrial scheduling order and failure to provide executed authorizations for the release of tax, employment, and medical records. The show cause motion was denied as moot because plaintiff agreed to drop the named defendant upon whom plaintiff failed to perfect service of process. The motion to compel tax records was also denied as moot when plaintiff agreed to

provide the records. The court granted the motion as to the employment records, finding them highly relevant to the issue of mitigation and to the computation of damages. Because plaintiff placed his mental condition at issue in the case and because he intended to seek more than nominal damages for any alleged emotional distress, the court concluded that plaintiff could not maintain a claim of privacy in his mental health medical records. Defendant, however, was not entitled to pursue discovery of physical ailment medical records. The court rejected defendant's request for sanctions under Fed. R. Civ. P. 37.

**OUTCOME:** The magistrate denied as moot defendant's motion for an order to show cause and motion to compel production of tax records. The magistrate granted defendant's motion to compel production of employment records. The magistrate also granted defendant's motion to compel production of medical records but directed defendant to modify its authorization form to cover only mental health records. The magistrate denied defendant's request for sanctions.

**COUNSEL:** [*1] APPEARANCES

Todd M. Roen, Esq., on behalf of Plaintiff

Sandra L. Conroy, Esq., on behalf of Defendants

**JUDGES:** JONATHAN LEBEDOFF, Chief United States Magistrate Judge

**OPINION BY:** JONATHAN LEBEDOFF

**OPINION**

**ORDER**

JONATHAN LEBEDOFF, Chief United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Chief Magistrate Judge of District Court on October 16, 2002 on Defendant Northwest Airline's Motion for Order to Show Cause (Doc. Nos. 41 & 42.) and Motion to Compel. (Doc. Nos. 41 & 42.) The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

## I. INTRODUCTION

This is an employment discrimination case. Plaintiff claims that he was terminated from his job because of race discrimination. Defendant Northwest Airlines ("Northwest") claims that Plaintiff was fired for cause. The instant motion arises from Plaintiff's alleged failure to comply with the pretrial scheduling order and to provide executed authorizations for the release of tax, employment, and medical records. The Court will address each of Northwest's requests separately.

## II. DISCUSSION

[*2] **A.** *Defendant's Motion for Order to Show Cause*

Northwest moves for an order compelling Plaintiff to show cause as to why he failed to perfect service of process upon Defendant Richard Vandermolen ("Vandermolen") in compliance with the Court's pretrial order. (Def. Mem. Supp. Mot. at 5.) At the motion hearing, the Court questioned Plaintiff as to the appropriateness of naming Vandermolen as a co-defendant since he is a former employee of Northwest and could not be held personally liable in this case. *See Spencer v. Ripley County State Bank*, 123 F.3d 690, 691 (8th Cir. 1997) (dismissing claims against supervisor because he could not be held personally liable under Title VII). Plaintiff stated unpersuasively that the choice to

name Vandermolen in the original complaint was mainly a stylistic one made for the sake comprehensiveness. The Court then asked whether Plaintiff would agree to drop Vandermolen as a named party on condition that he be made available for deposition in Arizona. Both Parties agreed. Accordingly, Northwest's Motion for Order to Show Cause is denied as moot. [1]

> 1 Pursuant to this Order, the Court expects the Parties to file the appropriate papers so as to properly dismiss the Complaint as to Defendant Vandermolen.

[*3] **B.** *Defendant's Motion to Compel*

The Federal Rules of Civil Procedure contemplate liberal discovery; the information sought only need be "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 57 L. Ed. 2d 253, 98 S. Ct. 2380 (1978); *Hickman v. Taylor*, 329 U.S. 495, 501, 91 L. Ed. 451, 67 S. Ct. 385 (1947). A party is allowed to fully explore the relevant facts so that it can present reasoned and informed evidence and theories at trial. In the context of discovery, "relevant" has been defined as encompassing "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Hickman*, 329 U.S. at 501. Discovery should not limited to matters in the pleadings because discovery is designed to help establish and clarify the issues in a case. *See id.* at 500-01. Additionally, discovery should not be limited to the merits of a case because other fact-oriented issues, possibly unrelated to the merits, may arise and properly be the subject of discovery. *See Oppenheimer Fund*, 437 U.S. at 351. [*4]

In May 2002, Northwest served written discovery on Plaintiffs, seeking executed authorizations for the release of Plaintiff's tax, employment, and medical records. Plaintiff objected to signing the authorizations, stating inter alia that the requests were overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and unreasonably invasive of his privacy. The Court will address each request in turn.

### 1. Tax Records

In its requests for the production of documents, Northwest sought executed authorizations for Plaintiff's

**Page 2**

federal and state tax returns for tax years 1994 to date. Plaintiff has already produced those tax returns and schedules which were in his possession and has agreed to produce the remaining information requested, but not via authorization. Instead, Plaintiff has provided executed authorizations to his attorney, allowing him to obtain copies of the tax returns not in his possession from the Internal Revenue Service and the relevant state departments of revenue. At the motion hearing, Plaintiff stated that all tax returns would be provided to Northwest as soon as they are received. Northwest agreed to this procedure. [*5] Thus, this portion of Northwest's motion is denied as moot.

### 2. *Employment Records*

Northwest also seeks executed authorizations for the release of Plaintiff's wage and employment records. Plaintiff repeatedly objected to the request on the basis that the proposed authorization is overly broad and unreasonably invasive of Plaintiff's privacy, in that it seeks "any and all information" pertaining to Plaintiff's employment and does not limit the request in time to events relevant to this case. (Pl. Ex. F & J.) Although Plaintiff has indicated that he would be willing to sign an authorization limited in scope to the issues raised in the Answer or Complaint, and limited in time to events relevant to the Complaint, he has proposed no alternative language. (*Id.* at 2.)

The Court is satisfied that the authorization as currently drafted is neither overly broad nor unnecessarily invasive of Plaintiff's privacy. First, Plaintiff cannot hide behind blanket assertions of privacy to avoid legitimate discovery requests without showing some particular need or bad faith on the part of Northwest. *See Schoffstall v. Henderson,* 223 F.3d 818, 823 (8th Cir. 2000). Second, [*6] both past and post-termination wage and employments records are highly relevant to the issue of mitigation and to the computation of damages in this case. Third, other types of employment information such as disciplinary records, resumes, and applications may not be admissible at trial, but are reasonably calculated to lead to admissible evidence. For instance, in order to fully assess Plaintiff's allegations, Northwest is entitled significant latitude in which to discover whether Plaintiff has made similar kinds of allegations against employers in the past, and whether he has been the subject of disciplinary action for his work performance. Finally, contrary to Plaintiff's

assertion, the proposed authorization is time sensitive; it automatically terminates at the conclusion of this case. Accordingly, this portion of Northwest's motion is granted.

### 3. *Medical Records*

In addition to tax and employment records, Northwest seeks an order compelling Plaintiff to execute authorizations for the release of his medical records. [2] The Parties strongly disagree about the discoverability of these records. Northwest asserts that it is entitled to the records because Plaintiff seeks [*7] compensation based in part on emotional distress as a result of Northwest's alleged adverse employment action. Specifically, Norwest contends that Plaintiff placed his emotional well-being at issue by claiming emotional distress damages and that it is entitled to discover whether Plaintiff's medical records reveal that his alleged emotional distress was caused at least in part by events and circumstances unrelated to the alleged employment discrimination. (Def. Mem. Supp. Mot. at 7-8.)

> [2] Northwest's proposed Authorization for Release of Medical Records authorizes health care providers to release all of the following: "Discharge Summary," "Correspondence," "Consultation Reports," "History and Physical Exam," "Laboratory Reports," "Physical Therapy Records," "Chemical Dependency Treatment Records," "Operative Reports," "Pathology Reports," "X-Ray Reports," "Psychiatric/Psychological/Mental Health Records," and "Any and all other information in [the health care provider's] possession."

Plaintiff, on the other [*8] hand, argues that his medical records are neither relevant nor discoverable and that he has not placed his medical condition at issue simply because he seeks emotional distress damages. (Pl. Mem. Opp. Mot. at 6-8, 12-13.) Moreover, since he has not claimed any specific mental or physical injury and does not intend present any expert testimony at trial regarding any physical or psychological illness, condition, or disorder, Plaintiff's medical records are not relevant to the action. (*Id.*) According to Plaintiff, as long as he does not rely on his medical records for proving emotional distress damages, Northwest is not entitled to access the records.

Emotional distress damages are recoverable in

**Page 3**

employment discrimination cases. *See Williams v. Trans World Airlines, Inc.,* 660 F.2d 1267, 1272 (8th Cir. 1981). While numerous cases have examined the issue of whether an independent medical or psychological examination can be ordered under Federal Rule of Civil Procedure 35 for a plaintiff who claims some kind of emotional harm in a racial or sexual discrimination lawsuit, few cases have directly addressed the discoverability of [*9] the plaintiff's medical records in such cases. Nevertheless, it is clear, first, that simply because the "in controversy" standard of Rule 35 is not satisfied, it does not follow that the medical records are undiscoverable. Rule 26 allows discovery of all relevant, unprivileged information that is admissible at trial or is reasonably calculated to lead to admissible evidence. *See* Fed. R. Civ. P. 26(b)(1). Therefore, regardless of whether Plaintiff's mental or emotional condition is in controversy, his medical records may be nonetheless relevant if they shed light on other contributing causes of Plaintiff's emotional distress claims.

In arguing that his medical records are not relevant in the instant case, Plaintiff places much stock in his representation to the Court that he does not intend to use either medical records or medical testimony to prove his claim for emotional distress damages. (Pl. Mem. Opp. Mot. at 2, 7, 13.) It is true that "[m]edical or other expert evidence is not required to prove emotional distress," and that "'[a] plaintiff's own testimony, along with the circumstances of a particular case, can suffice to sustain [*10] the plaintiff's burden in this regard.'" *See Kim v. Nash Finch Co.,* 123 F.3d 1046, 1065 (8th Cir. 1997) (quoting *Turic v. Holland Hospitality, Inc.,* 85 F.3d 1211, 1215-16 (6th Cir. 1996)). However an award of damages for emotional distress must be supported by "competent evidence of 'genuine injury.'" *See Forshee v. Waterloo Indus., Inc.,* 178 F.3d 527, 531 (8th Cir. 1999) (quoting *Carey v. Piphus,* 435 U.S. 247, 264 n.20, 55 L. Ed. 2d 252, 98 S. Ct. 1042 (1978)). A plaintiff must offer evidence of the nature and extent of emotional harm caused by an alleged violation. *See Bailey v. Runyon,* 220 F.3d 879, 880-81 (8th Cir. 2000). Conclusory statements that a plaintiff suffered emotional distress are inadequate because they "give the finder of fact no adequate basis from which to gauge the 'nature and circumstances of the wrong and its effect on the plaintiff.'" *See id.* at 881 (citations omitted). Absent corroborating evidence of emotional harm, a plaintiff is entitled solely to nominal damages. *See id.* at 882 (affirming $ 1.00 nominal damage award to a prevailing male employee in action

against employer [*11] for same-sex harassment); *Dhyne v. Meiners Thriftway, Inc.,* 184 F.3d 983, 986 (8th Cir. 1999) (affirming $ 1.00 nominal damage award to female who had been sexually harassed by a male coworker).

Therefore, if Plaintiff intends to seek only nominal damages for emotional harm, Northwest's need for Plaintiff's medical records is diminished, though not entirely extinguished. If, on the other hand, Plaintiff intends to seek anything more than nominal damages for any alleged emotional distress, then he is placing his mental condition at issue in this case, and Northwest is entitled to explore any evidence, including Plaintiff's medical records, which may be relevant to such a claim. *See Schoffstall v. Henderson,* 223 F.3d 818, 823 (8th Cir. 2000) (finding that employee's claims of sex discrimination and emotional distress damages placed her medical condition at issue, making her medical records relevant, and, absent a showing of bad faith, discoverable).

In the instant case, several factors militate against finding in favor of Plaintiff. First, Plaintiff has identified at least three experts who may testify at trial. One is a medical doctor; the other two [*12] are purportedly psychologists. Although Plaintiff claims that none of the experts will provide medical or psychological testimony, he concedes that they will be used "to prove up emotional distress damages." (Pl. Mem. Opp. Mot. at 7.) How it is that Plaintiff will use expert testimony to prove emotional distress damages without offering medical or psychological testimony is not clear. Plaintiff argued at the motion hearing that the experts would, if called to testify, offer their opinions regarding the "emotional impact of discrimination." Whatever such testimony may entail, Plaintiff is clearly seeking more than nominal damages for his alleged emotional distress. In discussing the "emotional impact of discrimination," these experts would no doubt place Plaintiff's emotional distress at issue in this case. Therefore, the Court finds Plaintiff's attempt to navigate around the relevancy of the emotional distress allegations to be disingenuous. As such, the Court is unwilling to allow Plaintiff to have it both ways. Plaintiff may not remain free to use expert testimony in the course of proving his emotional damages while at the same time refuse to produce his medical records which may [*13] effectively undermine such testimony. At this juncture, the issue is whether Plaintiff's medical records are discoverable, not whether they are admissible. That determination is for the trial judge.

**Page 4**

Second, Plaintiff has not provided any justifications to the Court explaining why certain aspects of his medical history should remain confidential, other than to make blanket statements about invasions of privacy.

Finally, regardless of whether Plaintiff intends to introduce his medical records or offer medical testimony to prove his alleged emotional distress, Northwest is entitled to determine whether Plaintiffs relevant medical history indicates that his alleged emotional distress was caused in part by events and circumstances independent of Northwest's allegedly adverse employment action. Northwest should be allowed to discover whether Plaintiff has suffered from, or been treated for, symptoms similar to those alleged in the Complaint and asserted in Plaintiffs written responses to interrogatories. As previously noted, discovery is broad and the parties should be armed with as much relevant information as is reasonably possible to properly assess the merits of the case. Plaintiff [*14] must keep in mind that Northwest is entitled to fully explore its theory of this case, independent of Plaintiff's specific claims or allegations.

In conclusion, while the Court is mindful of the privacy issues involved in the discovery of medical records, the Court also favors the broad contours of discovery. Medical and psychological records often reflect a person's well-being, the manner in which he or she perceives a course of events, and external circumstances that may be contributing to the harms complained of in a lawsuit. Furthermore, where a plaintiff puts his emotional condition into issue in the litigation, he effectively waives his right to privacy in any relevant and unprivileged medical records. *See Schoffstall*, 223 F.3d at 823. Here, Plaintiff has placed his medical condition at issue by claiming emotional distress damages. As such, Plaintiff may not maintain a claim of privacy in his medical records, and Northwest is entitled to obtain and review them.

Plaintiff's emotional distress claim does not, however, give Northwest an unfettered right to pursue discovery into Plaintiff's entire medical history. While Northwest is entitled to discover Plaintiff's [*15] mental and emotional health treatment records, it is not entitled to pursue discovery of treatments Plaintiff may have received for physical ailments or injuries.

Accordingly, with respect to health care providers from which Northwest may obtain medical records concerning any mental or emotional treatment or therapy,

Northwest is directed to modify its authorization form such that it authorizes only the release of medical information pertaining to the treatment or diagnosis of a mental, emotional, or psychological condition. The information to be disclosed may include: discharge summaries (if related to mental or emotional treatment), consultation reports (if related to mental or emotional treatment), psychiatric/psychological/mental health records, and chemical dependency treatment records. Laboratory reports, x-rays, pathology reports, physical therapy records, and information concerning physical examinations are to be expressly excluded. [3]

> [3] Nothing in this Order prevents the Parties from entering into a protective agreement to cover the disclosure of confidential information in this case. Whether or not any information contained in Plaintiff's medical records will be admissible at trial is not a question before this Court; rather, it is a matter reserved for the trial judge.

### [*16] C. *Sanctions, Costs and Attorney's Fees*

Northwest argues that Plaintiff should be ordered to pay the following: (1) $ 600 of the stayed sanctions granted by the Court's August 25, 2002 Order, and (2) an additional $ 700 for the costs and fees incurred by Northwest in bringing this motion. (Def. Mem. Supp. Mot. at 9-10.) Plaintiff contends that Northwest is not entitled to the stayed portion of the discovery sanctions because Plaintiff has not missed a discovery deadline or engaged in dilatory discovery practices. (Pl. Mem. Opp. Mot. at 13-14.) Furthermore, Plaintiff argues that Northwest is not entitled to costs and fees associated with bringing this motion because Northwest has not made a good faith effort to obtain the discovery at issue in this motion and because Plaintiff's objections to the proposed authorizations are substantially justified. (*Id.* at 15-16.)

Pursuant to the terms of the Court's August 26, 2002 Order, Plaintiff's previous late discovery responses were unjustified and warranted an award of $ 750 in sanctions. The Court directed that Plaintiff pay only $ 150 of the sanction and stayed the remaining portion pending Plaintiff's timely compliance with [*17] all future discovery deadlines, unless good cause excuses such compliance. In its motion papers, Northwest has not identified any discovery deadline that Plaintiff failed to satisfy in a timely manner. Northwest only notes that Plaintiff's failure to perfect service of process on Vandermolen violates the deadline for adding parties.

**Page 5**

Otherwise, it appears that Plaintiff has provided timely supplemental discovery in response to inquiries from Northwest. (*See* Pl. Ex. F & G.) Plaintiff has also paid $ 150 to Northwest and made himself available for deposition. Accordingly, Northwest is not entitled to the stayed portion of discovery sanctions granted in the Court's August 26, 2002 Order. This part of Northwest's motion is denied.

With respect to costs and attorneys' fees, Federal Rule of Civil Procedure 37(a)(4) permits a court to award fees and costs to a party who moves to compel discovery even if the requested discovery is provided after the motion was filed, unless the moving party did not attempt in good faith to obtain the discovery, the opposing party's nondisclosure was substantially justified, or an award would be unjust.

In this case, [*18] the Court finds that Northwest made repeated attempts in good faith to obtain executed authorizations for tax, employment, and medical records from Plaintiff. (Def. Ex. I, J, K, L, & M.) Therefore, the issue is whether Plaintiff has also raised valid objections to the proposed authorizations. Plaintiff objected to the proposed authorization for release of wage and employment records on the grounds that it is overly broad, unduly burdensome, and unreasonably invades Plaintiff's privacy. (Pl. Mem. Opp. Mot. at 6.) Given that Plaintiff's employment records, especially post-termination, are highly relevant to mitigation and damages, the Court questions the merits of the objection. However, because the proposed authorization is broad in scope, Plaintiff's objection is not so unjustified as to warrant granting Northwest cost and fees. Similarly, Plaintiff objected to the proposed authorization for the release of Plaintiff's medical on similar grounds. Here, the Court finds that Plaintiff's objections are substantially justified because the proposed authorization seeks the disclosure of some information which is irrelevant to issues in this case. Therefore, Northwest's request for costs and [*19] attorneys' fees is also denied.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

(1) Defendant's Motion for Order to Show Cause and to Compel (Doc. No. 41 & 42) is **GRANTED IN PART, DENIED IN PART, and DENIED AS MOOT IN PART,** as set forth fully in the body of this Order;

(2) Defendant Vandermolen must be made available for deposition in Arizona at a mutually agreeable time between the Parties;

(3) Defendant Northwest shall modify its medical authorization form as directed in this Order and serve same upon Plaintiff no later than November 8, 2002;

(4) Plaintiff shall sign Defendant's modified Authorization for Release of Medical Records no later than November 15, 2002; and

(5) Plaintiff shall sign Defendant's Authorization for Release of Wage and Employment Records no later than November 15, 2002.

Dated: October 28, 2002

JONATHAN LEBEDOFF

Chief United States Magistrate Judge

Not Reported in F.Supp.2d, 2004 WL 1238004 (E.D.La.)
**(Cite as: 2004 WL 1238004 (E.D.La.))**

**C**
Only the Westlaw citation is currently available.

United States District Court,
E.D. Louisiana.
Joseph BAER
v.
MIDLAND ENTERPRISES D/B/A ORSOUTH
TRANSPORTATION CO., et al.

No. Civ.A. 03–1331.
June 3, 2004.

Sylvia Cabiran, Sylvia Cabiran, Attorney at Law, New Orleans, LA, for Plaintiff.

Joseph Baer, New Orleans, LA, pro se.

Don Keller Haycraft, David Latham Reisman, Liskow & Lewis, Stephen Mark Klyza, Mary Caroline Higgins, The Kullman Firm, New Orleans, LA, for Defendants.

*ORDER AND REASONS*
BERRIGAN, J.

*1 Before the Court is Pro Se Plaintiff's, Joseph Baer, Motion and Order in Limine. After a thorough review of the record, the law, the Motion, and the memoranda filed in support of the Motion and in opposition thereto, Plaintiff's Motion and Order in Limine is hereby GRANTED IN PART and DENIED IN PART.

I. BACKGROUND
This suit arises out of Plaintiff's employment with Defendants. Defendants employed Plaintiff as a ship pilot from July 12, 2000 to March 18, 2002. Plaintiff claims that Defendants discriminated against him because of an alleged disability, harassed him, in-vaded his privacy, and intentionally inflicted emotional distress. He also made a claim under the Jones Act that a fellow employee assaulted and battered him. On June 2, 2004, the Court granted partial summary judgment in favor Defendants dismissing all Plaintiff's claims except those made under the Jones Act.

Although trial of the above-captioned matter was originally scheduled for March 25, 2004, the trial was continued along with all other applicable deadlines. The trial is now set for January 6, 2005. On March 17, 2004, Plaintiff filed the afore-mentioned Motion in Limine. Defendants filed an opposition on April 22, 2004.

Before the trial was continued, Plaintiff and Defendants compiled a bench book containing all the exhibits the parties intended to use at trial. Plaintiff objected to the introduction into evidence of four of those exhibits. Specifically, Plaintiff objected to the following exhibits on the following grounds: any records from the M/V Colonel because the records are irrelevant and were illegally obtained; any employee records from the Maryland Marine because the records are irrelevant; any New Orleans Municipal Court records as the exhibits are inadmissible under Rule 410 of the Federal Rules of Evidence; and any records from DePaul Hospital as they are irrelevant and were obtained without the permission of Plaintiff.

Defendant first contends that the Motion in Limine is premature in light of the continuance of the trial. Nevertheless, Defendant asserts that each of the documents is admissible.

At the time Plaintiff and Defendants filed the Motion and opposition, respectively, the Motion for Summary Judgment had not yet been ruled upon.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 1238004 (E.D.La.)
**(Cite as: 2004 WL 1238004 (E.D.La.))**

II. LAW AND ANALYSIS

A. Plaintiff's Employment Records with the M/V Colonel

Plaintiff objects to the introduction of his employment records with the M/V Colonel. He argues that the records were obtained improperly, that they are irrelevant, and that they are overly prejudicial.

First, Plaintiff's records were properly obtained. Plaintiff contends that neither the M/V Colonel nor Defendants asked for his consent to release the information. Likewise, he states that no one notified Plaintiff of the subpoena being served.

Although Defendants admit that they did not obtain a release from Plaintiff for the information, such a release is not necessary. *See* FED. R. CIV. PROC. 45; *Graham v. Casey's Gen'l Stores*, 206 F.R.D. 251 (S.D.Ind.2002). Nowhere in Rule 45 of the Federal Rules of Civil Procedure or any other applicable Rule is such a release required. Additionally, Plaintiff has not directed the Court to any other Rule or statute which would prohibit introduction of Plaintiff's employment records without his consent to the employer's release of the information.

*2 Plaintiff also states that he did not receive notice of the request for production of his employment records. Rule 30(b)(1) of the Federal Rules of Civil Procedure does require that notice be given to all parties to the litigation when one party seeks the production of documents from a non-party. FED. R. CIV. PROC. 30(b)(1). It appears, however, that Defendants did give Plaintiff notice by sending him a copy of the letter they sent the M/V Colonel. Defendants have attached a copy of the letter they sent to the M/V Colonel requesting the employment records. In the letter itself, Defendants indicate that they sent a copy of the letter, to which was appended a copy of a subpoena, to Plaintiff.

Second, Plaintiff contends that the employment records are not relevant. "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. FED.R.EVID. 401. Evidence which is not relevant is not admissible. FED.R.EVID. 402. The employment records from the M/V Colonel include an incident report concerning a marine accident in which Plaintiff apparently ran the M/V Colonel aground. Plaintiff also apparently failed to mention this incident to Defendants at the time he was hired. Defendants contend that this evidence is relevant to prove its after-acquired evidence defense. The after-acquired evidence defense, articulated by the Supreme Court in *McKennon v. Nashville Banner Pub. Co.,* 513 U.S. 352, 360, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995), provides that where an employer discovers after termination that the employee engaged in wrongdoing, generally neither reinstatement nor front pay is an appropriate remedy. Defendants contend that, at the time it hired Plaintiff, had it known that Plaintiff lied about the incident, it would not have hired him. Defendants contend, and the Court agrees, that this evidence is indeed relevant to the issue of damages under the after-acquired evidence defense.

However, as aforementioned, on June 2, 2004, the Court partially granted summary judgment in favor of Defendants dismissing all of Plaintiff's employment discrimination claims. Therefore, this evidence, while once relevant to prove Defendants' after-acquired evidence defense, is no longer relevant to the claims or defenses of the parties. Accordingly, the evidence is not admissible to prove an after-acquired evidence defense.

However, Defendants contend that the evidence is relevant to prove that Plaintiff operates according to a modus operandi—that is, Defendants claim that, whenever Plaintiff perceives himself to be facing possible punishment, Plaintiff immediately becomes

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 1238004 (E.D.La.)
(Cite as: 2004 WL 1238004 (E.D.La.))

verbally abusive and threatening, denies any mis-conduct on his part, and then accuses the individual whom he perceives as a threat as engaging in unlawful and/or criminal conduct. Defendants claim that the employment records are relevant to show, therefore, that, because Plaintiff has made false accusations in the past, Plaintiff's assertion that he was assaulted by another seaman is, at best, untrue.

**\*3** While Defendants might be able to jump through the hurdle created by Rule 404(b) of the Federal Rules of Evidence [FN1] Defendants point to in their opposition, the evidence must still be relevant under Rule 401. Evidence that Plaintiff may have acted according to a plan whenever he was accused is only relevant to show that, immediately prior to the termination of Plaintiff's employment, Plaintiff did in fact begin cursing at his supervisor and accusing him of wrongdoing. Such evidence is relevant only to prove that the employer had a legitimate non-discriminatory reason for firing Plaintiff. As aforementioned, all Plaintiff's employment discrimi-nation claims were dismissed on summary judgment. Therefore, this evidence is not relevant.

> FN1. Rule 404(b) of the Federal Rules of Evidence provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in con-formity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, prep-aration, plan, knowledge, identity, or ab-sence of mistake or accident ..."

> FED.R.EVID. 404(b).

B. Plaintiff's Employment Records from the Maryland Marine

Plaintiff also objects to the admissibility of his employment records from the Maryland Marine on the grounds of relevancy. Those records show that Plain-tiff's employment with the Maryland Marine was terminated involuntarily due to his failure to perform the duties of relief captain. (Rec. Doc. 100, exhibit 10). Prior to his employment with Defendants, Plain-tiff, according to Defendants, represented that he had not been fired from any other employment and that he had no performance issues during any other employ-ment. (Rec. Doc. 100, exhibit 9). Defendants argue this evidence is relevant to prove its after-acquired evidence defense. Again, since Plaintiff's employment discrimination claims were dismissed, this evidence is no longer relevant and, therefore, is inadmissible.

C. Plaintiff's Medical Records from DePaul Hospital

Plaintiff claims that his medical records are not admissible because he has not executed a signed re-lease of the records. Defendants have not yet obtained the medical records and anticipate filing a Motion to Compel Plaintiff to release his medical records. This matter, although plead as a matter of admissibility, is a matter of discoverability and has been relegated by the local rules to the Magistrate Judges and shall not be addressed in this Order. Defendants remain free to file a Motion to Compel.

Plaintiff also claims that his medical records are not admissible as they are irrelevant. The crux of Plaintiff's remaining complaint is that he suffered significant mental anguish as a result of being fired and as a result of being battered by a fellow employee. Plaintiff was treated at DePaul Hospital for his mental condition. The records from DePaul Hospital are rel-evant to the issue of damages. Additionally, they are likely issued to the issue of causation. Therefore, they are admissible.

D. Court Records Regarding Plaintiff's Arrest on May 27, 2003

Plaintiff objects to the admissibility of the records of his arrest on May 27, 2003. Plaintiff contends that these records are inadmissible under Rule 410 of the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 1238004 (E.D.La.)
**(Cite as: 2004 WL 1238004 (E.D.La.))**

Federal Rules of Evidence. Rule 410 provides:

> Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea—or was a participant in the plea discussions:

> **\*4** (1) a plea of guilty which was later withdrawn;

> (2) a plea of nolo contendere;

> (3) any statement made in the course of any proceedings under Rule 11 of the Federal Rules of Criminal Procedure or comparable state procedure regarding either of the foregoing pleas; or

> (4) any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

> However, such a statement is admissible (I) in any proceeding wherein another statement made in the course of the same plea or plea discussions has been introduced and the statement ought in fairness be considered contemporaneously with it, or (ii) in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record and in the presence of counsel.

FED.R.EVID. 410.

Plaintiff attached to his Motion a copy of an Order from the Municipal Court for the Parish of Orleans dismissing the charges against him and expunging his record of the charges pursuant to LA.REV.STAT. 44:9. Defendants contend that they need more time to address this Motion as they are uncertain what has transpired in the Municipal Court for the Parish of Orleans.

Because it appears that Rule 410 is largely inapplicable to Plaintiff's conviction or the dismissal and expungement, the Court will deny Plaintiff's Motion.

However, the Court fails to see the relevancy of such evidence. Again, defendant contends that the evidence is relevant to show Plaintiff's modus operandi. As previously discussed such, even if this evidence could be construed to show a plan, Rule 401 bars its introduction into evidence except as provided in Rules 607, 608, and 609 of the Federal Rules of Evidence.

III. CONCLUSION

Plaintiff's Motion and Order in Limine is hereby GRANTED IN PART and DENIED IN PART.

Defendants may not introduce into evidence Plaintiff's employment records from the M/V Colonel or Maryland Marine or the records of his conviction and the subsequent dismissal and expungement, except for the purposes of impeachment.

Assuming Defendants are allowed to have discovery of Plaintiff's medical records from DePaul hospital and that the medical records are not subject to any other as of yet unraised evidentiary objection, such records are relevant and, accordingly, will be admissible except as just provided.

E.D.La.,2004.
Baer v. Midland Enterprises d/b/a Orsouth Transp. Co.
Not Reported in F.Supp.2d, 2004 WL 1238004 (E.D.La.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.



Positive
As of: Dec 02, 2014

**NORRIS O. HITE, JR., Plaintiff, v. MARY E. PETERS, Secretary, U.S. Department of Transportation, Defendant.**

**Civil No. 07-4492-RMB-AMD**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

**2009 U.S. Dist. LEXIS 51894**

**June 19, 2009, Decided**
**June 19, 2009, Filed**

**SUBSEQUENT HISTORY:** Summary judgment granted by Hite v. Peters, 2010 U.S. Dist. LEXIS 65121 (D.N.J., June 30, 2010)

**COUNSEL:** [*1] For NORRIS O. HITE, JR., Plaintiff: DENNIS L. FRIEDMAN, LEAD ATTORNEY, PHILADELPHIA, PA.

For MARY E. PETERS, Secretary, U.S. Department of Transportation, Defendant: IRENE E. DOWDY, LEAD ATTORNEY, OFFICE OF THE US ATTORNEY, CAMDEN, NJ.

**JUDGES:** ANN MARIE DONIO, UNITED STATES MAGISTRATE JUDGE.

**OPINION BY:** ANN MARIE DONIO

**OPINION**

*MEMORANDUM OPINION AND ORDER*

This matter comes before the Court by way of motion [Doc. No. 15] of Plaintiff, Norris O. Hite, Jr., for a protective order precluding Defendant, Mary E. Peters, from obtaining by way of subpoena the employment records of Plaintiff from PleasanTech Academy Charter School (hereinafter, "PleasanTech"), and by way of cross-motion [Doc. No. 17] of Defendant for an order to compel discovery. The Court has considered the submissions of the parties, and has decided this matter pursuant to FED. R. CIV. P. 78. For the reasons that follow, Plaintiff's motion for a protective order is denied, and Defendant's cross-motion to compel is granted.

Plaintiff initiated this action by filing a complaint on September 19, 2007 seeking judicial review and a trial *de novo* pursuant to 42 U.S.C. § 2000e-16(c) on the issues raised in his complaint of discrimination filed with the United States [*2] Equal Employment Opportunity Commission. (Compl. PP 3, 19.) Plaintiff alleges in the complaint that his employment with the Federal Aviation Administration (hereinafter, "FAA") was terminated "on the basis of race (African-American), color (black) and sex (male)." (*Id.* at PP 5, 10, 13.) Plaintiff seeks in this action, *inter alia,* a determination that the termination of his employment was discriminatory and, therefore, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.,* retroactive reinstatement with back pay, benefits, and compensatory damages under the Civil Rights Act of 1991. (Compl., "Prayer for Relief".)

In the motion presently before the Court, Plaintiff requests an Order precluding Defendant from issuing a subpoena for Plaintiff's employment records from PleasanTech, Plaintiff's place of employment subsequent

**Page 1**

to his termination with the FAA. (Pl.'s Mem. in Supp. of Mot. for Protective Order (hereinafter, "Pl. Br.") 1.) Plaintiff contends that a request for his employment records is "highly intrusive" and relates to matters "which are not relevant to the issues of the lawsuit." (*Id.*) Plaintiff asserts that in the event the Court awards [*3] back pay in this case, a back pay award can be computed in accordance with the Back Pay Act, 5 U.S.C. § 5596, and the formulas set forth in its implementing regulations. (*Id.* at 2.) Plaintiff represents that he already provided to Defendant "information necessary for back pay computation purposes," including W-2s, 1099s and a declaration regarding the income he has received since his termination with the FAA, and thus contends that the employment information to be subpoenaed by Defendant is not relevant to the issues in this case. (*Id.* at 2-3.)

In response, Defendant seeks the employment records to demonstrate the extent to which Plaintiff mitigated his damages since the termination of his employment with the FAA in November 2003, which information is purportedly necessary in the calculation of any back pay that may be awarded to Plaintiff. Defendant propounded discovery as to Plaintiff's mitigation of damages, including his sources of income since November 2003, his availability for work since that time, and Plaintiff's receipt of disability insurance payments. (Def.'s Mem. in Opp. to Pl.'s Mot. for Protective Order and in Supp. of Def.'s Cross-Mot. to Compel Discovery (hereinafter, [*4] "Def. Br.") 2.) According to Defendant, Plaintiff stated in discovery that subsequent to his termination with the FAA, he was employed by PleasanTech as a substitute teacher and a full-time teacher, but Plaintiff has not provided the specific dates of employment in either a part-time or full-time position, and a computation of post-employment income is purportedly not possible based upon the information provided by Plaintiff. (Decl. of Irene E. Dowdy, Assistant United States Attorney (hereinafter, "Dowdy Decl.") PP 3, 12; Def. Br. 3.) While Plaintiff has provided W-2s, 1099s, and a declaration, Defendant asserts that the employment records from PleasanTech are necessary to verify, corroborate, refute, and/or add to the evidence provided by Plaintiff. (Def. Br. 10-11.) Defendant further argues that the documents produced by Plaintiff do not set forth the amount of money that Plaintiff could have earned since his employment with the FAA was terminated in 2003. (*Id.* at 11.) In addition, Defendant asserts that Plaintiff responded in discovery that he received "unemployment compensation" and "Disability Insurance payments" as additional sources of income since November 2003, but allegedly [*5] has not provided any further information about his receipt of disability insurance payments or periods of disability. (Dowdy Decl. PP 3, 16; Def. Br. at 5-6.) Defendant also contends that Plaintiff's employment records may disclose the reason why Plaintiff's employment with PleasanTech ended in 2007 and therefore are relevant to the issue of mitigation. (*See* Def. Br. 11.) Defendant seeks an order denying Plaintiff's motion for a protective order and compelling Plaintiff to respond to supplemental discovery concerning his receipt of disability insurance payments.

Federal Rule of Civil Procedure 26(c) provides the Court with authority to enter a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" FED. R. CIV. P. 26(c)(1). Upon a showing of good cause, the Court may "forbid[] the disclosure or discovery," or may "forbid[] inquiry into certain matters, or limit[] the scope of disclosure or discovery to certain matters[.]" *Id.* The party seeking a protective order bears the burden of demonstrating that good cause exists to limit or foreclose discovery. *See id.* A party seeking a protective order is required to demonstrate [*6] a "particular need for protection." *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d. Cir. 1986).

Plaintiff's objections to production of his employment records are based on two different grounds. First, Plaintiff opposes any discovery on mitigation issues, asserting that back pay "can be computed in accordance with the formulas applied by the courts and administrative agencies under the Back Pay Act at 5 U.S.C. § 5596[,]" and that "[b]ack pay damages are calculated by subject matter experts, *i.e.,* personnelists employed by federal administrative agencies, and involve a comparison of income and monetary value of benefits had plaintiff remained employed at FAA versus his post-termination salary and benefits." (Pl. Br. 2.) Second, Plaintiff asserts that the discovery is not relevant, or alternatively, that the information provided is sufficient. (*Id.* at 1, 3.) For the reasons that follow, the Court rejects both arguments.

With respect to the argument based upon the Back Pay statute, the Court notes that Plaintiff brings this case pursuant to 42 U.S.C. § 2000e-16, by which a federal government employee may file a civil action as provided

**Page 2**

in 42 U.S.C. § 2000e-5. 42 U.S.C. § 2000e-16(d) [*7] specifically makes 42 U.S.C. § 2000e-5(g), governing remedies available for unlawful employment practices, applicable to actions brought by a federal employee pursuant to 42 U.S.C. § 2000e-16. Under 42 U.S.C. § 2000e-5(g), "[i]f the court finds that the respondent has intentionally engaged in . . . an unlawful employment practice charged in the complaint, the court may . . . order such affirmative action as may be appropriate, which may include . . . reinstatement or hiring of employees, with or without back pay[.] . . ." 42 U.S.C. § 2000e-5(g). However, "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." *Id.* Thus, Title VII claimants have a statutory duty to mitigate damages. The employer, however, bears the burden of proving a failure to mitigate. *Booker v. Taylor Milk Co., Inc.,* 64 F.3d 860, 864 (3d Cir. 1995) (citing *Robinson v. SEPTA, Red Arrow,* 982 F.2d 892, 897 (3d Cir. 1993)). Upon a finding of an employee's failure to mitigate, a back pay award must be reduced by the amount the employee could have earned with reasonable diligence. *Id.* at 866.

In light of Plaintiff's [*8] duty to mitigate damages under Title VII, the Court rejects Plaintiff's assertion that the information sought by Defendant in discovery for determining mitigation is unnecessary to the calculation of back pay under the Back Pay Act. [1] (*See* Pl. Br. 2-3.) While Plaintiff contends that a back pay award will be calculated by comparing "income and monetary value of benefits had plaintiff remained employed at the FAA versus his post-termination salary and benefits" (*id.* at 2), Title VII expressly requires that a back pay award be reduced by "amounts earnable with reasonable diligence by the person or persons discriminated against[.] . . ." 42 U.S.C. § 2000e-5(g). Thus, mitigation of damages impacts the calculation of back pay under the Back Pay Act for a Title VII violation. *See Brown v. Secretary of the Army,* 918 F.2d 214, 217-18, 287 U.S. App. D.C. 8 (C.A.D.C. 1990) ("[T]he Back Pay Act is an auxiliary measure that leaves the structural framework of Title VII intact and fully applicable. . . . The specific limitation of Title VII must prevail over the more generous term of the Back Pay Act. . . . Title VII and the Back Pay Act, are most sensibly read as complementary."). Moreover, the Court rejects Plaintiff's [*9] assertion that evidence concerning mitigation in this action will not be presented to the trier of fact and is therefore not discoverable. (*See* Pl. Br. 2.) A determination of whether Plaintiff met his duty to mitigate damages is made by the trier of fact. *See Booker,* 64 F.3d at 864. Accordingly, even if the trier of fact does not ultimately calculate the final amount of a back pay award because such determination may be made by "personnelists employed by federal administrative agencies," as Plaintiff asserts, evidence must be presented to the trier of fact on the issue of mitigation. *Cf. White v. Bloomberg,* 501 F.2d 1379, 1384 (4th Cir. 1974) (in affirming district court's refusal to reopen judgment to consider mitigation issue that was not raised prior to entry of summary judgment on liability, Fourth Circuit noted that regulations under Back Pay Act have not adopted a procedure for "exclusive administrative computation of back pay following a judicial order for reinstatement" and thus rejected defendant's argument that it was not required to raise mitigation before the district court).

1 The Back Pay Act provides, in relevant part, as follows:

> An employee of an agency who . . . is found [*10] by appropriate authority under applicable law . . . to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee--
>
> (A) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect--
>
> (i) an amount equal to all or any part of the pay, allowances, or differentials, as applicable which the employee normally would have earned or received during the period if the personnel action had not occurred, less any amounts earned by the employee through other employment during that period[.]

5 U.S.C. § 5596(b)(1)(A)(i).

The Court also rejects Plaintiff's argument that the

Page 3

post-termination employment records sought by Defendant are not relevant to the issues in this case. (Pl. Br. 1.) As a general matter, parties may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.] . . ." FED. R. CIV. P. 26(b)(1). The Court may also permit for "good cause" discovery of matters that are "relevant to the subject matter involved in the action." *Id.* "Relevant information need [*11] not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.; see also Nestle Foods Corp. v. Aetna Cas. & Sur. Co.,* 135 F.R.D. 101, 104 (D.N.J. 1990) ("[I]t is important to distinguish the right to obtain information by discovery from the right to use it at trial."). Thus, relevancy is more liberally and broadly construed at the discovery stage than at trial. *See Nestle,* 135 F.R.D. at 104. The party resisting discovery "has the burden of clarifying, explaining and supporting its objections." *Id.* (citing *Tele-Radio Sys. Ltd. v. De Forest Elec.,* 92 F.R.D. 371, 375 (D.N.J. 1981)). Once the party resisting discovery meets this requirement, however, the burden is placed on the proponent of the discovery request to show that the information sought is relevant. *See id.* (citing *McClain v. Mack Trucks, Inc.,* 85 F.R.D. 53, 57 (E.D. Pa. 1979); *United States v. Int'l Bus. Mach. Corp.,* 66 F.R.D. 215, 218 (S.D.N.Y. 1974)).

The Court finds that Plaintiff's post-termination employment records are relevant under Rule 26 standards to the issue of mitigation of damages, and specifically, the amount that Plaintiff could have earned [*12] with reasonable diligence. [2] Defendant contends, and the Court agrees, that documents setting forth the specific dates on which Plaintiff was employed by PleasanTech in a full-time position, those dates on which he was employed in a part-time position, and the rates of pay for each period of employment, bear on the amount Plaintiff could have earned with reasonable diligence. (Def. Br. 2, 11.) The employment records are likely to contain such information, and a request for these documents thus is reasonably calculated to lead to the discovery of admissible evidence on the issue of mitigation. [3] *See Noble v. Ruby Tuesdays Restaurants, Inc.,* No. Civ. A. 2:06-259, 2007 U.S. Dist. LEXIS 78924, 2007 WL 3125131, at *2 (S.D. Ohio Oct. 23, 2007) (in Title VII employment action, "[e]mployment records are relevant to the issues of mitigation and damages[.]"); *E.E.O.C. v. Woodmen of World Life Ins. Soc.,* No. Civ. A. 8:03-165, 2007 U.S. Dist. LEXIS 7488, 2007 WL 649298, at *5 (D. Neb. Feb. 1, 2007) (in Title VII employment action, court

found that "although the plaintiffs have provided certain financial information, the employment records sought [from plaintiff's employers for whom plaintiff worked subsequent to her employment with defendant] . . . [*13] may contain information relevant to [plaintiff's] mitigation of damages. Additionally, [plaintiff's] general job performance records reasonably bear on the defendant's stated reason for [plaintiff's] demotion[.]"); *Walker v. Northwest Airlines Corp.,* No. Civ. 00-2604, 2002 U.S. Dist. LEXIS 27592, 2002 WL 32539635, at *2 (D. Minn. Oct. 28, 2002) ("[B]oth past and post-termination wage and employment records are highly relevant to the issue of mitigation and to the computation of damages in this case. . . . [O]ther types of employment information such as disciplinary records, resumes, and applications . . . are reasonably calculated to lead to admissible evidence."). The Court concludes that Defendant is entitled to discovery of documents bearing on mitigation and that the employment records are relevant to the issue of mitigation. Plaintiff proffers no other basis to support his request for a protective order; accordingly, Plaintiff's request for a protective order is denied.

    2   As noted above, Defendant in this case bears the burden of proving a failure to mitigate. *Booker,* 64 F.3d at 864.

    3   Furthermore, while Plaintiff has provided W-2s, 1099s, and a declaration to demonstrate his post-termination employment income, [*14] the Court rejects the argument that these documents preclude Defendant from seeking employment records by way of subpoena.

Defendant has cross-moved to compel Plaintiff to provide additional information and documentation as to the periods he received disability insurance payments. (*See* Dowdy Decl. Ex. 6 (Letter dated August 13, 2008) at 3.) Defendant's Interrogatory 9 requested that Plaintiff "[d]escribe in detail all sources of income [he] ha[s] had since the termination of [his] employment with the Federal Aviation Administration[.]" (Dowdy Decl. Ex. 1 at 10.) In addition, Defendant's document request sought production of "[a]ll documents, records, and/or writings identified and/or relied upon in answering the above interrogatories." (*Id.* at 12.) Plaintiff's response to Interrogatory 9 was as follows: "Unemployment compensation, salary from positions at PleasanTech Academy Charter School. Disability Insurance payments." (Dowdy Decl., Ex. 5.) No further information

**Page 4**

has purportedly been provided by Plaintiff with respect to the disability insurance payments he received. (Dowdy Decl. P 16.)

Rule 37(a) of the Federal Rules of Civil Procedure provides that, on notice to other parties and [*15] all affected persons, "a party may move for an order compelling disclosure or discovery." FED. R. CIV. P. 37(a)(1). The Rule further provides that a motion to compel a discovery response is appropriate when "a party fails to answer an interrogatory submitted under Rule 33" or when "a party fails to respond that inspection will be permitted -- or fails to permit inspection -- as requested under Rule 34." FED. R. CIV. P. 37(a)(3)(B). An "evasive or incomplete" discovery response "must be treated as a failure to disclose, answer, or respond." FED. R. CIV. P. 37(a)(4).

The Court finds that Plaintiff is required to provide a supplemental response to Defendant's Interrogatory 9 in accordance with FED. R. CIV. P. 37(a). Defendant specifically requested the name and address of the entity providing "disability insurance benefits," the amounts received by Plaintiff, a description of the nature of the "disabilit[y][ies] claimed by Plaintiff," and copies of all disability insurance policies and all documents submitted by Plaintiff to the insurer(s) in support of his claim for benefits under such disability insurance policies. (Dowdy Decl. Ex. 6.) According to defense counsel, Plaintiff's counsel [*16] purportedly agreed that Defendant was

entitled to more detailed information about the disability payments than had been provided in Plaintiff's interrogatory response, but Plaintiff has failed to provide such information. (Dowdy Decl. PP 8, 16.) Moreover, the Court notes that Plaintiff has not filed any opposition to the cross-motion to compel. Therefore, the Court shall grant Defendant's cross-motion to compel.

CONSEQUENTLY, for the reasons set forth above and for good cause shown:

IT IS on this 19th day of June 2009,

**ORDERED** that Plaintiff's motion [Doc. No. 15] for a protective order shall be, and is hereby, ***DENIED;*** and it is further

**ORDERED** that Defendant's cross-motion [Doc. No. 17] to compel shall be, and is hereby, ***GRANTED;*** and it is further

**ORDERED** that Plaintiff shall provide a response to Defendant's Interrogatory 9, as supplemented by Defendant's August 13, 2008 letter, by no later than **July 10, 2009.**

/s/ Ann Marie Donio

ANN MARIE DONIO

UNITED STATES MAGISTRATE JUDGE