IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JON HOWARD ROWLAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.:    3:13-CV-00702 |
| | ) | Judge: Reeves/Guyton |
| THE STRAYER UNIVERSITY | ) | JURY DEMAND |
| CORPORATION | ) | |
| | ) | |
| Defendant. | ) | |

---

**PLAINTIFF'S REPLY MEMORANDUM OF LAW ADDRESSING THE DEFENDANT'S RESPONSE BRIEF TO PLAINTIFF'S MOTION TO QUASH DEFENDANT'S SEVEN (7) SUBPOENAS SEEKING PLAINTIFF'S PRE-EMPLOYMENT RECORDS**

---

The Plaintiff hereby files this Reply Memorandum of Law in Support of his Motion to Quash the Defendant's seven (7) subpoenas of the Plaintiff's previous employers.

**I.     Introduction**

In this employment discrimination case, the Plaintiff has filed a Motion to Quash the Defendant's subpoenas to seven (7) of Plaintiff's previous employers.[1]  The Plaintiff files this Reply brief to address the arguments in Defendant's Response.  (Def.'s Response, Doc. #31).  In its Response, Defendant argues that the seven (7) subpoenas are relevant to Plaintiff's (1) economic damages, (2) mitigation of damages, and (3) Defendant's after-acquired evidence.  (Def.'s Response, Doc. #31, p. 1).  For the following reasons, the Plaintiff submits that the Defendant has failed to show why these records are relevant, and Plaintiff's Motion to Quash should be granted.

---

[1] The Plaintiff learned Defendant intended to subpoena records from a seventh (7th) employer after Plaintiff filed his Motion to Quash, but as Plaintiff understands, the parties agreed to treat the seventh (7th) subpoena as included in the Motion to Quash.

## II.     Argument

The Defendant's Response largely ignores the Plaintiff's point articulated in his Motion to Quash:  The sheer breadth of the subpoenas, with the exception of medical records and bank accounts, seek "all employment related documents and records" from more than a decade of Plaintiff's employment history.   This scope-of-the-subpoenas argument is two-fold: (1) the subpoenas are facially overbroad ("all employment related documents and records"), and (2) the subpoenas' temporal proximity to Plaintiff working for Defendant is limitless (more than a decade of employment history).[2]  The subpoenas are tantamount to a fishing expedition, and for reasons explained below, Plaintiff's Motion should be granted.[3]

Regarding the duty to mitigate damages, the Defendant's Response fails to explain how or why Plaintiff's pre-employment records will address this issue.   To the extent Defendant asserts that Plaintiff's "job skills and training" from his previous employers is related to mitigation, it could easily be resolved without the use of subpoenas.  For example, the Defendant could inquire into this information by simply asking for it in an Interrogatory or by taking the Plaintiff's deposition.  Furthermore, the law on an employee's duty to mitigate considers whether the employee "has exercised reasonable diligence in seeking other suitable employment

---

[2] In its Conclusion, Defendant's counsel requests his attorney's fees and costs because Plaintiff's counsel "summarily declined" his offer to limit the subpoenas to Plaintiff's past three (3) employers. Defendant's offer was premised on a misunderstanding of Plaintiff's argument.  Plaintiff declined this offer for several reasons, one of which, is because the subpoenas, as currently drafted, are facially overbroad and without limit. *See, e.g.*, *Badr v. Liberty Mut. Grp., Inc.*, No. CIV 3:06CV1208 AHN, 2007 WL 2904210, at *3 (D. Conn. Sept. 28, 2007) ("However, the defendant seeks 'any and all records relating to' the plaintiff, not just documents that pertain directly to whether she filed a claim or complaint against a manager at Enterprise. The subpoena, as it is currently drafted, is overly broad. . . .") (emphasis added); *Richmond v. UPS Serv. Parts Logistics*, No. IP01-1412-C-H/G, 2002 WL 745588, at *4 (S.D. Ind. Apr. 25, 2002) ("However, Defendant's requests to obtain [Plaintiff's] entire personnel file, on its face, is overbroad and not reasonably calculated to lead to the discovery of admissible evidence.").

[3] Although Plaintiff believes the Motion to Quash should be granted, as an alternative, this Honorable Court could drastically narrow the subpoenas, both in facial scope of the information sought and in the temporal connection to Plaintiff's employment with Defendant.

following [the] discriminatory discharge". [4]  "The reasonableness of the effort to find <u>substantially equivalent employment</u> should be evaluated in light of the individual characteristics of the claimant and the job market."[5]  The Plaintiff's "individual characteristics" include his prior training and job skills, which are easily determined by appropriate Interrogatories or by taking Plaintiff's deposition.   Moreover, "substantially equivalent employment" means comparable employment to the position Plaintiff held <u>with the Defendant</u>, and not with his prior employers.

In citing a Minnesota district court, the Defendant posits, "Defendant should be allowed to obtain Plaintiff's pre-employment wage and employment records from his employer.  These records are clearly relevant to his duty to mitigate his damages." (Def.'s Response, Doc. #31, p. 4).  First, the Defendant makes repeated conclusory statements that "employment records" will reveal a failure to mitigate—without explaining or identifying specific portions of the employment records wherein they expect to discover such information.  Secondly, the Defendant makes an inferential leap with its conclusion because it does not explain how exactly pre-employment wages impact one's duty to mitigate damages.  While <u>post</u>-termination payroll records are certainly relevant to this issue, pre-employment payroll records—encompassing more than a decade of employment history—have no relation to the mitigation of damages whatsoever, and are beyond the permissible scope of discovery, are unnecessarily intrusive into the Plaintiff's past employment, and are a burden on the seven (7) innocent employers who must respond to such subpoenas.[6]

---

[4] *Suggs v. ServiceMaster Educ. Food Mgmt.*, 72 F.3d 1228, 1233 (6th Cir. 1996).

[5] *Rasimas v. Michigan Dep't of Mental Health*, 714 F.2d 614, 624 (6th Cir. 1983).

[6] *See, e.g.*, *Stewart v. Orion Fed. Credit Union*, 285 F.R.D. 395, 399 (W.D. Tenn. 2012) ("The court finds that plaintiffs' payroll records from the prior employers are beyond the scope of permissible discovery. The plaintiffs' prior wage history is not relevant to their damages or the issue of mitigation.") (emphasis added); *Maxwell v. Health*

The Defendant relies on *Walker v. Northwest Airlines Corp.*, 2002 U.S. Dist. Lexis 27592 (D. Minn. Oct. 28, 2002) for this proposition. Although the *Walker* court allowed discovery into the plaintiff's past employment records, it is notable that the court was <u>not</u> called upon to distinguish between pre-termination and post-termination employment records, as in the case *sub judice*. Instead, for purposes of mitigation and computation of damages, the *Walker* court seemingly characterized "both past and post-termination" records to be one in the same. *See id.* at *5-6.

Next, the Defendant asserts that, under the after-acquired evidence doctrine, if "Plaintiff misrepresented his work experience and education" (Def.'s Response, Doc. #31, p. 4), then that would have undoubtedly led to Plaintiff's termination. This is a prime example of why the subpoenas are facially overbroad. If the Defendant wishes to subpoena these previous employers to determine Plaintiff's "work experience and education", then Defendant could simply narrow the scope of the subpoenas to information specifically related to Plaintiff's prior employment applications and job descriptions, instead of subpoenaing "all employment related documents and records". Moreover, Defendant could just as easily determine Plaintiff's "work experience and education" through less intrusive means of discovery—such as, Interrogatories or taking Plaintiff's deposition.[7]

---

*Ctr. of Lake City, Inc.*, No. 3:05CV1056-J-32MCR, 2006 WL 1627020, at *3 (M.D. Fla. June 6, 2006) ("Defendant seeks salary and payroll history from each of Plaintiff's previous employers and states that 'such records will provide a basis for damages in indicating Plaintiff's prior wage history.' <u>Defendant's reasoning, however, is defective. While a former employee's subsequent salary is relevant to the issue of mitigation of damages, Defendant has failed to show why her prior salary has any relevance to damages.</u> The Court agrees with Plaintiff and finds that Plaintiff's records showing her prior wage history are not relevant to the issue of damages.") (internal citation omitted) (emphasis added).

[7] Throughout the course of discovery, Plaintiff has provided Defendant with Interrogatory answers relating to his past work experience and reasons for leaving, which Defendant has—presumably—compared with the representations in Plaintiff's Strayer University application. Ostensibly, Defendant found no discrepancies or misrepresentations, and, without further basis to believe Plaintiff would commit perjury, the Defendant should be prohibited from delving into the issue further.

4

Courts disapprove of defendants using this form of discovery, brought under the guise of the after-acquired evidence doctrine, that would permit them to raise defenses not previously asserted for which there is no factual basis. The Supreme Court, in *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 363 (1995), acknowledged this "concern that [an] employer might as a routine matter undertake extensive discovery into an employee's background" to resist employment claims, and that a trial court, therefore, has the authority to deter any possible discovery abuses. *Id.* at 360-63. In that same vein, the court in *Maxwell v. Health Ctr. of Lake City, Inc.*, No. 3:05CV1056-J-32MCR, 2006 WL 1627020, at *5 (M.D. Fla. June 6, 2006) rejected the defendant's attempt to raise after-acquired evidence through discovery of employment records:

> Defendant argues that Plaintiff's personnel files may provide information relevant to its after-acquired evidence defense. While the Supreme Court has recognized that the after-acquired evidence defense can be used in certain instances to limit damages and remedies available, it also cautioned that employers should not, as a routine matter, undertake extensive discovery into an employee's background or performance to resist claims. In fact, various courts have applied the *McKennon* reasoning to hold that although the after-acquired evidence doctrine can be used to limit an employee's remedies based on evidence found during discovery, it should not be used to independently initiate discovery. *See e.g.*, *Premer v. Corestaff Services, L.P.*, 232 F.R.D. 692, 693 (M.D. Fla. 2005) (explaining that "although the after-acquired evidence doctrine provides employers a mechanism to limit an employee's remedies based on evidence found during discovery, it should not be used as an independent basis to initiate discovery"). Rather, Defendant must have some pre-existing basis to believe that after-acquired evidence exists before it can take on additional discovery. *See Preston v. American Express Travel Related Servs. Co., Inc.*, Case No. 3:00-cv312-J-25TJC (2001). The Court finds that Defendant has failed to assert any pre-existing basis for the belief that after-acquired evidence of Plaintiff's wrongdoing exists. *Id.* at *5 (emphasis added) (internal citations omitted).

Likewise, this Honorable Court should prohibit the Defendant from using this type of discovery in an attempt to try to create a defense for which it has no pre-existing factual basis to support.

The Defendant wishes to "explore" Plaintiff's work records—in an attempt to engage in a fishing expedition—to discover anything that might have happened at some other place and time. The basis for serving these subpoenas is premised upon false hope and utter speculation that something may be discovered. It is also unclear, at this juncture, whether the Defendant will even be able to meet their burden of establishing that, had they known about any after-acquired evidence, it would have forthwith terminated the Plaintiff.[8] Otherwise, any arising issues will be tangential and collateral, and irrelevant under the Federal Rules of Civil Procedure.[9]

The Plaintiff has already supplied the Defendant, in his Interrogatory answers, the reasons for leaving his previous employers, as well as his prior work experience and education. Further, the Plaintiff will continue to supplement his responses as they relate to mitigation issues and economic damages up until the date of trial.

## III.    Conclusion

For the foregoing reasons, the Plaintiff respectfully requests for this Honorable Court to grant the Plaintiff's Motion to Quash the Defendant's seven (7) subpoenas. The information sought in the subpoenas is irrelevant and could be discovered through less intrusive means.

---

[8] *See, e.g.*, *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 362-63 (1995) ("Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge.").

[9] *Chamberlain v. Farmington Sav. Bank*, No. 3:06CV01437 CFD, 2007 WL 2786421, at *3 (D. Conn. Sept. 25, 2007) ("The defendant also claims that information contained in the plaintiff's prior employment records is relevant to his credibility as a witness. The defendant maintains that the records are discoverable in order to determine whether the plaintiff has been truthful about his performance history and his reasons for leaving his former positions. As above, the defendant has not alleged any reason to believe that the plaintiff has misrepresented information during the course of this litigation with regard to his previous employment to substantiate such a broad search of his employment records on this ground."); *Hood v. Fiberweb, Inc.*, No. 3-10-0355, 2010 WL 4102219, at *2 (M.D. Tenn. Oct. 18, 2010) ("Information about discipline by her current employer could relate only to potential impeachment information. While discovery of information that could lead to impeachment may properly be the subject of discovery, the Court finds that such discovery should be limited to those subjects upon which there is some reason to believe that the plaintiff testified untruthfully. Concerns about the plaintiff's credibility on issues relating to . . . the reasons for her separation from prior employment cannot open all doors to discovery of her personnel information in the possession of her current employer on the off chance that the defendant might discover some bit of information that could be used for impeachment purposes, when the discovery is not otherwise relevant to the claims and defenses in this case.") (emphasis added).

RESPECTFULLY SUBMITTED this 8th day of December, 2014.

**BURKHALTER, RAYSON & ASSOCIATES, P.C.**

s/David A. Burkhalter, II
David A. Burkhalter II, BPR #004771
Attorney for Plaintiff
P.O. Box 2777
Knoxville, Tennessee 37901
(865) 524-4974

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing document was served upon counsel of record by either the Court's electronic mail system or by placing same in the United States mail with proper postage affixed thereto this the  8th  day of December, 2014.

s/David A. Burkhalter, II
David A. Burkhalter, II

8